UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,　　　　　　　　　　　　Case Number 13-20551
v.　　　　　　　　　　　　　　　　　　　Honorable David M. Lawson

KARNAIL SINGH,

        Defendant.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF CORAM NOBIS

Defendant Karnail Singh, a naturalized citizen, pleaded guilty to passport fraud in 2014 and was sentenced to probation for a year. As part of a plea agreement, the government assured him that the conviction resulting from this guilty plea would not result in "immigration consequences" unless there were "possible future criminal charges" brought against him. However, in 2018, the government filed an action against Singh in another district to revoke his citizenship. Singh now has filed a petition for a writ of error *coram nobis* to challenge his passport fraud conviction, contending that he was misled by the government and his own attorney about the immigration consequences of his guilty plea.

It is true that the government's decision to attack Singh's citizenship appears to be at odds with the representations in the plea agreement. However, the government does not base its citizenship challenge on Singh's conviction; rather, it premises its case on the facts underlying the fraudulent application for citizenship. And although some of those facts were admitted by Singh at the guilty plea colloquy, and the plea itself is referenced in the government's complaint filed in the other district, it is not the conviction that forms the basis of the challenge. Moreover, despite Singh's assertion that he would not have pleaded guilty had he known what was coming as to his

citizenship, the likelihood of conviction was high, even if Singh would have taken his chances with a jury. Because the outcome of the criminal case probably would have been no different, any error that was made cannot support the issuance of a writ of error *coram nobis*. The motion, therefore, will be denied.

I.

Singh, a native of India, came to the United States in 1991 seeking asylum. He filed two applications three years apart, which contained inconsistent representations. He was approved for permanent residency in 2002 once his status was adjusted on the basis of his marriage to a United States citizen in 1996. He became a United States citizen himself in 2008 and was issued a passport in 2009. The criminal charges in this case arose from misrepresentations that the government believed he made along his path toward citizenship.

A. First Asylum Application and Deportation Order

On December 20, 1991, after arriving to the United States, Singh submitted a Form I-589 asylum application to the Immigration and Naturalization Service (INS). He listed his name as "Karnail Singh Dhillon" and stated that he was born in India in January 1963. As part of the application process, Singh was fingerprinted and then signed the application, certifying that the application and accompanying documents were true and correct. With his first asylum application, Singh submitted biographical information on a Form G-325 dated November 20, 1991. In the form, Singh represented that (i) his name was Karnail Singh Dhillon; (ii) he was born in January 1963 in India; (iii) he had used no other names; and (iv) Gurmail Singh and Jeet Kaur are his parents. Singh reaffirmed the truth of these representations during an interview with the INS Asylum Office on January 5, 1993.

On September 29, 1993, the INS denied Singh's first asylum application and initiated deportation proceedings against him. He ultimately was ordered deported on January 25, 1995 for failing to appear in immigration court. There is no record that Singh actually departed the United States as required.

Singh states in his petition that he arrived in the United States without a birth certificate or passport and relied on his mentor at the Sikh Temple where he had received shelter to help him purchase a birth certificate and fill out his asylum application. Because he was not able to read or write English at the time, Singh explains that he did not inspect the birth certificate or application and did not discover that they included the wrong name and birth date until he received his work card several months later. Singh says that in order to correct the error, he consulted an attorney, who told him to file a second application, and that it would merge into his first one. Singh says that he discovered later that the attorney had lied to him.

B. Second Asylum Application and Naturalization

On July 12, 1994, Singh submitted a second application for asylum on a Form I-589. This time, he filed under the name "Karnail Singh" and listed a birth date of December 1968. Again, Singh was fingerprinted, and he signed his second application, certifying that the application and all accompanying documents were true and correct. With his second asylum application, Singh submitted biographical information on a Form G-325, dated July 11, 1994, in which he represented that (i) his name was Karnail Singh (ii) he was born in December 1968, in India; and (iii) Tarsem Singh and Tara Kaur are his parents. He left blank the question requesting that he provide "All Other Names Used."

While his second application was pending, Singh married a United States citizen. On May 5, 1996, Singh filed an adjustment to his second application indicating the marriage had taken

place and asking for permanent residence status. On the adjustment, Singh did not disclose that he had applied previously for and been denied immigration benefits in the United States.

On May 9, 2002, Singh was granted lawful permanent residence status under the biographical information that he used in his second application and adjustment. He then filed an application for naturalization when he became eligible on June 30, 2008. Singh became a naturalized United States citizen a few months later. In 2009, he was issued a United States passport with the biographic information from his second application and adjustment.

### C. Federal Criminal Charges and Guilty Plea

On June 16, 2013, during a routine stop at the United States and Canada border, Singh, a truck driver, was asked to show his passport. He presented his passport card to United States Customs and Border Protection officers in order to enter the United States. The name on the passport card was Karnail Singh and his date of birth was listed as December 1968. In speaking with the Border Protection officers, Singh stated that he had never used any other names or spelling variations of his name; nor had he ever used any other dates of birth. The customs officer questioned him. Although the record does not specify what sparked suspicion, something about this interaction led the INS to uncover the two applications Singh had filed using different names, and that he had not properly disclosed the first application in the second. Based on these events, Singh was charged in a two-count indictment with (1) knowingly using a passport unlawfully obtained or otherwise procured by fraud or means of a false claim or statement, in violation of 18 U.S.C. § 1546(a); and (2) knowingly and willfully making false, fictitious, and fraudulent material statements in a matter within the jurisdiction of the executive branch of the United States, in violation of 18 U.S.C. § 1001(a)(2).

On January 23, 2014, Singh entered into a plea agreement with the government. According to the agreement, the government agreed to dismiss Count Two (making a false material statement), and Singh agreed to plead guilty to Count One (use of a fraudulently obtained passport). The plea agreement includes the following language:

> Defendant's plea to this offense will not necessarily result in immigration consequences, but, in conjunction with possible future criminal charges, his guilty plea in this case may affect or even foreclose his eligibility to remain in this country. Defendant has discussed these matters with his attorney in this case, but he expressly agrees that his decision to plead guilty is in no way conditioned upon or affected by the advice he has been given regarding any potential immigration consequences of his conviction(s).

Plea Agreement, ECF No. 16, PageID.43-44. The plea agreement also states that, "[u]nless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan." *Id.* at PageID.45.

At the plea hearing, Judge Cohn again warned Singh of the immigration consequences of his plea:

> The Court: And you know that this guilty plea has — well, it does have an effect, I guess — can be used if the immigration services brings a petition to cancel your citizenship?
>
> Singh: Yes, Your Honor.
>
> The Court: You know that?
>
> Singh: Yes, Your Honor.

Plea Transcript, ECF No. 22, PageID.127. Singh avers that, before the hearing, the assistant United States attorney also informed him that the government did not intend to revoke his citizenship unless he committed another crime. Judge Cohn took the plea and the plea agreement under advisement pending his review of the presentence report. He later accepted both and sentenced Singh to 12 months of probation. Singh completed his probation without incident.

D. Citizenship Revocation Action

Four years later, on May 18, 2018, the government filed an action against Singh in the Eastern District of Kentucky, where he now resides. It seeks to revoke Singh's citizenship based, in part, on the same facts that Singh admitted when he pleaded guilty in 2014. The complaint does not cite Singh's passport fraud conviction as grounds for revoking citizenship. Instead, it rests its complaint on the same fraudulent conduct that formed the basis of the criminal charge. And the complaint mentions the guilty plea proceeding in which Singh admitted those facts.

Because of those admissions, as it now stands, the government will be able to rest largely on the plea Singh entered in 2014 to meet its burden in revoking Singh's citizenship. To avoid that result, Singh petitions this Court to vacate his conviction.

II.

Singh cannot move to vacate his sentence under 28 U.S.C. § 2255 because he is not "in custody" and he has completed his sentence. 28 U.S.C. § 2255(a) (limiting the remedy under that statute to "[a] prisoner *in custody* under sentence of a court established by Act of Congress") (emphasis added). However, under the All Writs Act, 28 U.S.C. § 1651, a district court may issue a writ of error *coram nobis*, which "is used to vacate a federal sentence or conviction when a § 2255 motion is unavailable — generally, when the petitioner has served his sentence completely." *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996) (citing *United States v. Morgan*, 346 U.S. 502, 510-11 (1954)). But the writ is only available where a petitioner demonstrates a factual error that was "unknown at the time of trial" and that is "of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known." *Pilla v. United States,* 668 F.3d 368, 372 (6th Cir. 2012) (quotations and citations omitted). "*Coram nobis* is an extraordinary writ, used only to review errors of the most fundamental

character — e.g., errors rendering the proceedings themselves invalid." *United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 1996).

Singh contends that he meets these criteria because both the government and his own lawyer told him that his guilty plea would not result in any immigration consequences unless other criminal charges were brought against him. He says that the government did not live up to its end of the plea agreement and is barred by its terms from bringing the action to revoke his citizenship. He also contends that his lawyer did not deliver effective assistance of counsel. Singh maintains that if he had known immigration consequences might result, he would have taken his chances with a jury and would not have entered into the plea agreement. In addition, Singh says the Court did not fully understand the nature of charges against Singh, so it could not have properly admonished him in the plea hearing, and therefore his plea was not knowing and voluntary.

The government disputes these arguments and contends that Singh waived his right to bring them because he never challenged his guilty plea on direct appeal. The waiver argument is specious. Until the government sued him in the Eastern District of Kentucky, Singh had no reason to believe that he had not accepted the terms of the agreement as he understood them. *Coram nobis* relief is not barred because "valid reasons" exist for why the petitioner did not attack the conviction earlier. *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012); *see also United States v. Abou-Khodr*, No. 99-81073, 2013 WL 4670856, at *4 (E.D. Mich. Aug. 30, 2013) (holding that where the petitioner filed his petition for a writ of error *coram nobis* shortly after the government's initiation of removal proceedings, despite challenging a plea made 10 years earlier, he was not barred from seeking a remedy under the writ). Here, Singh's understanding of the terms of the plea agreement and his attorney's advice appeared correct to Singh until the government filed an action to revoke his citizenship.

A. Knowing and Voluntary Plea

Singh posits that there were fundamental defects in the guilty plea process that were "unknown at the time of trial," and therefore support this issuance of a *coram nobis* writ. For one, he argues that his guilty plea was not made knowingly and voluntarily because he was misled about the potential immigration consequences of his conviction. To be valid, a guilty plea must be "voluntary," "knowing," and intelligent — that is, voluntarily made while "the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States*, 394 U.S. 459, 466 (1962) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A guilty plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

Some courts distinguish between direct (e.g., a prison sentence) and collateral (e.g., certain civil disabilities that might flow from a conviction) consequences of a criminal conviction, suggesting that a guilty-pleading defendant must be told of the former but not the latter. *See El-Nobani v. United States*, 287 F.3d 417, 420-21 (6th Cir. 2002). The Supreme Court, however, has acknowledged that the immigration consequences of a criminal conviction are "intimately related to the criminal process" and that "it [is] 'most difficult' to divorce the penalty from the conviction in the deportation context." *Padilla v. Kentucky*, 559 U.S. 356, 365-66 (2010). Federal courts, therefore, must advise guilty-pleading defendants that deportation and denial of citizenship could result from the conviction, Fed. R. Crim. P. 11(b)(1)(O), and defense counsel must include that advice in pre-plea discussions as a feature of constitutionally proper performance, *Padilla*, 559 U.S. at 374.

Singh contends that the Court did not satisfy its obligation under Rule 11(b)(1)(O), and therefore his guilty plea was not knowing and voluntary. However, at Singh's plea hearing, Judge Cohn told Singh that his guilty plea could have immigration consequences if immigration services brought a petition to revoke Singh's citizenship, and Singh stated he was aware of that fact. Hr'g Tr., ECF No. 22, PageID.127. The plea colloquy transcript makes it clear that the court satisfied the requirements of Rule 11(b)(1)(O).

Likewise, the terms of the plea agreement put Singh on notice of potential immigration consequences. The agreement explicitly states that Singh's plea "will *not necessarily* result in immigration consequences, but, in conjunction with possible future criminal charges . . . may affect or *even foreclose* his eligibility to remain in this country." Plea, ECF No. 16, PageID.43-44 (emphasis added). Certainly, that language reasonably could induce in Singh the expectation that the government would not take action against his citizenship except "in conjunction with possible future criminal charges." But it is not reasonable to construe that statement as immunizing him from the consequences of his fraudulent conduct apart from the conviction itself. Nor does the government's later-filed lawsuit in Kentucky affect the knowing and voluntary aspects of the guilty plea. After all, the plea agreement itself states that Singh "expressly agrees that his decision to plead guilty is in no way conditioned upon or affected by the advice he has been given regarding any potential immigration consequences of his conviction(s)." *Ibid.*

Singh resists the conclusion that his plea was knowing and voluntary by asserting that the Court was "struggling to understand the basis of the plea," evidenced by a back-and-forth between Judge Cohn and the attorneys surrounding the facts behind the indictment. Mot., ECF No. 25, PageID.149. That argument fails. A plea is rendered involuntary only if the plea colloquy is so misleading as to impair the defendant's substantial rights, i.e., that the defendant would not have

made the plea at all if the colloquy would have been different. *See United States v. Patrick*, 524 F. App'x 222, 225 (6th Cir. 2013). There is nothing in this record to suggest that. Instead, the record shows that Judge Cohn correctly specified Singh's charges at the end of the plea hearing, albeit with some assistance from Singh's attorney in straightening out the facts. Hr'g Tr., ECF No. 22, PageID.129. Moreover, the Court took the plea under advisement to ensure its own understanding before accepting the plea. *Id.* at PageID.130.

Singh relies on *United States v. Ataya*, 884 F.3d 318, 324 (6th Cir. 2018), for the general proposition that defects in the plea colloquy's discussion about the immigration consequences of a conviction can undermine the validity of a guilty plea. In *Ataya*, the Sixth Circuit vacated the defendant's guilty plea upon finding that the district court did not warn the defendant about the immigration consequences of his plea as required by Rule 11(b)(1)(O). But in that case, the district court did not even mention immigration consequences, and the government confessed error on that point. *Id.* at 321 (observing that "neither the plea agreement nor the district court seem[ed] to have mentioned that Ataya, who became a naturalized citizen after the alleged frauds, might face denaturalization as a result of his conviction"). The plea colloquy here is remarkably different: both the district court and the plea agreement gave Singh clear warning about possible immigration consequences of his conviction. *Ataya* does not help Singh.

The record does not support Singh's argument that his guilty plea was not voluntary or knowingly made.

### B. Ineffective Assistance of Counsel

Singh also alleges that he received ineffective assistance of counsel at the time he entered his guilty plea, and that this constitutional violation was "unknown at the time of trial." "A petition for a writ of error *coram nobis* is an appropriate vehicle for a claim based on ineffective assistance

- 10 -

of counsel." *United States v. Abou-Khodr*, No. 99-81073, 2013 WL 4670856, at *5 (E.D. Mich. Aug. 30, 2013) (citing *Chaidez v. United States*, 568 U.S. 342 (2013)).

To obtain relief on this claim, Singh must show that his attorney's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

Singh insists that his attorney's performance was deficient because he gave him wrong advice about the possible immigration consequences of his conviction, as demonstrated by the government's four-year-postconviction lawsuit to revoke his citizenship. Singh believed — reasonably — that his citizenship would not be challenged unless he committee another crime. He says that he asked his attorney to confirm that understanding with the AUSA on the case. The AUSA allegedly told Singh the United States did not intend to revoke his citizenship unless he committed another crime.

That representation is close to, but not identical with, the terms of the written plea agreement. The agreement reads: "Defendant's plea to this offense will not *necessarily* result in immigration consequences, but, in conjunction *with possible future criminal charges*, his guilty

- 11 -

plea in this case may affect or even foreclose his eligibility to remain in this country." Plea, ECF No. 16, PageID.43-44 (emphasis added). The language does not amount to a guarantee that "immigration consequences" will not ensue. Rather, the equivocal language can be read to foreclose automatic deportation or revocation of citizenship, as might otherwise result from a conviction of other crimes. *See* 8 U.S.C. § 1227(a); *see also* 8 U.S.C. § 1451(e) (making denaturalization automatic for a conviction under 18 U.S.C. § 1425). But it leaves open the possibility of future action, including a denaturalization proceeding.

Singh responds that the warning about immigration consequences was contingent on the government bringing "possible future criminal charges." That understanding is reasonable. That is what the written plea agreement implies. Should his attorney have warned him that denaturalization proceedings could result even without other criminal charges being brought? Probably, since that legal possibility remained. However, the guilty-plea-based conviction was not necessarily the trigger for the denaturalization lawsuit, which could have been brought even if Singh were never charged in this case to begin with. Nonetheless, Singh's admissions at the plea hearing certainly make the government's denaturalization case easier for it, and "prevailing professional norms" after *Padilla* was decided suggest that counsel should have imparted that advice.

But even if counsel performed deficiently, Singh must show prejudice. The prejudice component of the *Strickland* test is modified somewhat in the guilty plea context. Satisfying that requirement requires Singh to show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 58-59 (1985). Singh says that he satisfies this requirement "because his guilty plea caused the Government to file a Complaint to Revoke Naturalization, and now subjects him to removal from the United States . . . .

There is therefore a reasonable probability that, but for counsel's ineffective advice, Mr. Singh would have rejected the plea agreement and insisted on going to trial." Mot., ECF No. 25, PageID.152.

But Singh's insistence on this outcome is not enough by itself to establish prejudice. Rather, the test is an objective one and Singh must show that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. That is "never an easy task," *id.* at 371, mainly because the criminal justice system's interest in finality has "special force with respect to convictions based on guilty pleas," *United States v. Timmreck,* 441 U.S. 780, 784 (1979). The Supreme Court has warned that a guilty plea should not be "upset . . . solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, --- U.S. ---, 137 S. Ct. 1958, 1967 (2017). Instead, courts must "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Ibid.*

The evidence against Singh, including any defenses he may have mounted at trial, shows that the government's case against him was strong. It is fair to say that it is unlikely Singh would have prevailed at trial. In Count One, to which Singh pleaded guilty, Singh was charged with using a passport that he had "knowingly procured by means of any false claim or statement, or otherwise procured by fraud or unlawfully obtained" under 18 U.S.C. § 1546(a). The documentary evidence against Singh included two G-325 forms Singh submitted in connection with his first and second applications, respectively, which show conflicting information. In addition to using two different names and dates of birth, Singh lists different names for his parents (compare Gurmail Singh and Jeet Kaur with Tarsem Singh and Tara Kaur), different birth cities (compare Maloya with Beas Pind — two locations which are, notably, a three-hour drive from one another according

to Google Maps), and different previously-inhabited cities (compare Fremont, California to San Carlos, California). Further, he failed to note in his second application that he previously had applied for and been denied immigration benefits. It was the second application and adjustment that ultimately led to Singh's citizenship and United States passport.

Singh attempts to provide an explanation for these fatal inconsistencies, but it is unpersuasive. Singh says he realized the first application contained incorrect biographical information a few months after he submitted it in 1991. He says that upon realizing the mistakes, he hired an attorney who told him he could simply submit a new, second application to correct the errors. Singh's attorney allegedly informed him that his second application was not a wholly separate application, but rather it was merely a correction to the first application. Singh insists that he submitted his second application, with different biographical information, only out of a "sincere desire" to correct the record after realizing his name and birth date on the first application were incorrect.

The timeline, however, does not substantiate Singh's contention. Singh submitted his second application in 1994, nearly *three years* after he says he realized the errors. More importantly, his application had already been denied, and INS had instituted deportation proceedings against him. Singh would have had no reason to correct an application that had been denied one year earlier. The argument challenges logic, and it would not have helped Singh's credibility at a trial.

Next, Singh uses a similar justification for failing to report that he previously had applied for and been denied immigration benefits. He argues that because his attorney advised him that the second application was a correction of the first, he believed the two applications had "merged." He did not believe he had to report the first application because they were one.

But that excuse fails for similar reasons. Singh filed his second application in July 1994 — almost one year after his first application was denied in September 1993. There was nothing for the second application to "merge" into. The first application had been rejected and deportation had been ordered. Moreover, Singh reaffirmed the truth of the information on his first asylum application during an interview with INS.

Even if the Court were to accept Singh's logic, it would not yield him a favorable conclusion. If Singh believed the first and second application had somehow merged and became one application, he likely would have believed that the 1995 order deporting him applied to both the first and second application. In other words, the single application unquestionably would have terminated with the deportation order. Instead of heeding the deportation order, however, Singh married a United States citizen and filed an application in 1996 to adjust his status to permanent resident. Even if Singh's proffered defense is believable, it does not absolve him of wrongdoing. Singh's justifications for the discrepancies are not persuasive. There is no indication of a "likelihood of a favorable outcome at trial." *Dando v. Yukins*, 461 F.3d 791, 802 (6th Cir. 2006) (holding that when deciding whether a petitioner would have insisted on going to trial, the court must consider a "prediction of the likely outcome at trial").

But even when there is no likelihood of success at trial, the Court must weigh other considerations when immigration consequences possibly are in play when deciding if prejudice has been shown in the guilty-plea context. The Supreme Court explained:

> [C]ommon sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive. For example, a defendant with no realistic defense to a charge carrying a 20-year sentence may nevertheless choose trial, if the prosecution's plea offer is 18 years. Here Lee alleges that avoiding deportation was *the* determinative factor

for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time. He says he accordingly would have rejected any plea leading to deportation — even if it shaved off prison time — in favor of throwing a "Hail Mary" at trial.

*Lee*, 137 S. Ct. at 1966-67 (citations omitted).

The calculus here, however, is not quite the same for Singh as it was for Lee. In this case, deportation was not the inevitable result of a conviction of the crimes with which Singh was charged, as discussed above. He says that his guilty plea triggered the denaturalization proceedings in the Kentucky federal court, but that is not necessarily true. The government's complaint in that case, although mentioning the guilty plea to passport fraud, does not style its case on the premise that of the conviction. Instead, it alleges the underlying conduct as the basis for its effort to revoke citizenship, which it could rely upon even if Singh's guilty-plea-based conviction were set aside, and even if no criminal charges were brought in the first instance.

Looking back to the facts alleged by the government in the criminal case, as supported by the evidence, it is rather easy to conclude that there is *no* "likelihood of a favorable outcome at trial." *Dando*, 462 F.3d at 802. Singh, therefore, has not established the prejudice element of his ineffective-assistance-of-counsel claim.

### C. The Action to Revoke Singh's Citizenship

Finally, Singh argues that his guilty plea should be set aside because the government has breached the plea agreement by instituting denaturalization proceedings against him in Kentucky. He argues that the plea agreement, by its terms, provides an assurance that the resolution of his 2014 case would not result in denaturalization. This issue has been reviewed and decided in a non-final order by the Eastern District of Kentucky after Singh filed a motion to dismiss in that case. *See United States v. Singh*, 2019 WL 1212880, at *1 (E.D. Ky. Mar. 14, 2019). The court rejected Singh's arguments.

As the district court in Kentucky found, the plea agreement does not "guarantee" that an adverse immigration proceeding will *never* be brought against Singh "absent new criminal charges," as he suggests. First, the phrase "absent new criminal charges" appears nowhere in the plea agreement. The plea only states that Singh's guilty plea as to the offense charged at the time "will *not necessarily* result in immigration consequences." (Emphasis added). And the 2014 plea did not result in "immigration consequences." It was not until the government in the Eastern District of Kentucky instituted a separate, five-count action against Singh that immigration consequences might now result. That does not "necessarily" conflict with the language in the plea agreement ("in conjunction with possible future criminal charges, his guilty plea in this case may affect or even foreclose his eligibility to remain in this country."). The term "possible future criminal charges" does not equate to a requirement that Singh commit a "new crime" for immigration consequences to result.

Moreover, Singh's understanding of what the agreement meant does not control, because "the parties' actual understanding of the terms of the agreement" has no bearing on its interpretation, and "instead, an agreement must be construed *as a reasonable person* would interpret its words." *United States v. Moncivais*, 492 F.3d 652, 663 (6th Cir. 2007).

Finally, paragraph 8 of the plea agreement states that it "does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan." Plea, ECF No. 16, PageID.45. Therefore, nothing bars the U.S. Attorney's Office in the Eastern District of Kentucky from bringing the action.

### III.

Singh has not shown that his guilty plea proceedings were infected with any factual error that was unknown at the time, which was of a fundamentally unjust character, or that any error in

- 18 -

the case probably would have altered the outcome of the challenged proceeding if it had been known.

Accordingly, it is **ORDERED** that the defendant's motion for a writ of error *coram nobis* (ECF No. 25) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: June 19, 2022