UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                 Case Number 13-20551

v.                                                  Honorable David M. Lawson

KARNAIL SINGH,

        Defendant.
_____/

### OPINION AND ORDER DENYING SECOND MOTION FOR RECONSIDERATION OF ORDER DENYING PETITION FOR WRIT OF CORAM NOBIS

Defendant Karnail Singh is the subject of a denaturalization proceeding presently pending in the United States District Court for the Eastern District of Kentucky. The basis for those proceedings appears to be his conviction of passport fraud and the facts underlying that conviction. Alleging that his guilty plea was not fully informed and that he received bad advice from his lawyer, Singh filed a petition for a writ of error *coram nobis*. The Court denied that petition on June 19, 2022 and denied Singh's subsequent motion for reconsideration on April 28, 2023. Singh, however, persists. On December 31, 2024, he filed a second motion for reconsideration, arguing that the Court should revisit its denials of relief in light of the Second Circuit's recent holding in *Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024), that constitutionally adequate representation requires defense counsel to warn naturalized citizens that a guilty plea may carry a risk of denaturalization and deportation proceedings. But even if Singh could come up with a procedure that would allow the Court to revisit its previous decisions at this late date, he has not shown how *Farhane* would — or should — alter the Court's earlier holdings. The second motion for reconsideration will be denied.

I.

The facts of the case were discussed at length in the Court's previous opinions. *See United States v. Singh*, No. 13-20551, 2022 WL 2209369, at *1-3 (E.D. Mich. June 19, 2022); *United States v. Singh*, 95 F.4th 1028, 1031 (6th Cir.), *cert. denied*, 145 S. Ct. 167 (2024). For convenience, the summary from the order denying the first motion for reconsideration is repeated here.

Singh, a native of India, is a naturalized citizen. He pleaded guilty to passport fraud before the Honorable Avern Cohn in January 2014 under the belief, he says, that his conviction would not cause him to be subject to immigration consequences. As outlined in the Court's previous opinion on his petition, however, Singh was warned on the record by the Court and the government that a challenge to his citizenship remained a possibility. For instance, the plea agreement includes the following language:

> Defendant's plea to this offense will not necessarily result in immigration consequences, but, in conjunction with possible future criminal charges, his guilty plea in this case may affect or even foreclose his eligibility to remain in this country. Defendant has discussed these matters with his attorney in this case, but he expressly agrees that his decision to plead guilty is in no way conditioned upon or affected by the advice he has been given regarding any potential immigration consequences of his conviction(s).

Plea Agreement, ECF No. 16, PageID.43-44. The plea agreement also states that, "[u]nless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan." *Id.* at PageID.45.

At the plea hearing, Judge Cohn again warned Singh of the immigration consequences of his plea:

> The Court: And you know that this guilty plea has — well, it does have an effect, I guess — can be used if the immigration services brings a petition to cancel your citizenship?
>
> Singh: Yes, Your Honor.

    The Court: You know that?

    Singh: Yes, Your Honor.

Plea Transcript, ECF No. 22, PageID.127.

Singh also avers that, before the hearing, the assistant United States attorney informed him that the government did not intend to revoke his citizenship unless he committed another crime. Nonetheless, on May 18, 2018, the government filed an action against Singh in the Eastern District of Kentucky, where he now resides.  It seeks to revoke Singh's citizenship based, in part, on the same facts that Singh admitted when he pleaded guilty in 2014 — that is, that Singh filed for asylum a second time, after first being ordered deported, and failed to disclose his previous immigration history under another identity.  It mentions the guilty plea proceeding in which Singh admitted those facts and pleaded guilty to knowingly using a fraudulently-obtained passport. However, the complaint does not cite Singh's passport fraud conviction as grounds for revoking citizenship.  Instead, it pleads five causes of action for removal under 8 U.S.C. § 1451(a), all based on Singh procuring naturalization by concealing a material fact or making a willful misrepresentation. Four causes of action remain: (1) illegal procurement of naturalization by a person who was not lawfully admitted for permanent residence; (2) illegal procurement of naturalization by a person who committed unlawful acts in the five years before applying for naturalization; (3) illegal procurement of naturalization by a person who made false statements of the purpose of obtaining an immigration benefit; and (4) procurement of citizenship by concealment of a material fact or willful misrepresentation.  Denaturalization Compl., ECF No. 25-1, PageID.157-83.

Because of the factual admissions Singh made in his 2014 plea agreement, as it now stands, the government likely will be able to rest largely on those statements to meet its burden of revoking Singh's citizenship.  To avoid that result, Singh petitioned this Court to vacate his conviction.  He

asserted that both the government and his own lawyer told him that his guilty plea would not result in any immigration consequences unless other criminal charges were brought against him. He contended that the government did not live up to its end of the plea agreement and is barred by its terms from bringing the action to revoke his citizenship. He also argued that his lawyer did not deliver effective assistance of counsel. Finally, he maintained that the Court did not fully understand the nature of charges against Singh, so it could not have admonished him properly in the plea hearing, and therefore his plea was not knowing and voluntary.

On June 19, 2022, the Court issued an opinion and order denying Singh's petition for a writ of error *coram nobis*. It reasoned that the government decided to attack Singh's citizenship based on the facts underlying his fraudulent citizenship application, not on Singh's conviction for passport fraud, and that Singh likely would have been convicted of that crime even if he had taken his chances with the jury. The Court also held that Singh's guilty plea was voluntary and fully informed, and that he did not establish that he was denied the effective assistance of counsel. Singh then moved for reconsideration of that decision, but on April 28, 2023, the Court rejected his request. *United States v. Singh*, No. 13-20551, 2023 WL 3151097 (E.D. Mich. Apr. 28, 2023). It indicated that the potentially harsh collateral estoppel effects of the plea agreement on Singh's denaturalization proceedings did not offer a legal basis for reconsideration and that the Court's previous conclusions about his claims were sound. The Sixth Circuit later affirmed. *United States v. Singh*, 95 F.4th 1028, 1031 (6th Cir. 2024), and Singh's petition for *certiorari* was denied. *See Singh v. United States*, 145 S. Ct. 167 (2024) (mem.).

On December 31, 2024, Singh filed the present motion, again seeking reconsideration. The denaturalization proceedings pending in the Eastern District of Kentucky remain stayed pending the motion's disposition. *See* Order dated Jan. 6, 2025, *United States of America v. Karnail Singh*,

No. 18-85 (W.D. Ky.). The motion is fully briefed, and oral argument will not assist in its resolution. The Court will decide the motions on the papers submitted. E.D. Mich. LR 7.1(f)(2).

II.

Citing Federal Rule of Civil Procedure 59(e), Singh again asks the Court to reconsider its denial of his petition for a writ of *coram nobis*. Under that rule, the Court may grant a motion to amend or alter a judgment if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). A Rule 59(e) motion is not properly used, however, "to raise new legal arguments that could have been raised before a judgment was issued," or to re-hash old arguments. *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (stating that "[a] motion under Rule 59(e) is not an opportunity to re-argue a case")); *FDIC v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) (explaining that a Rule 59(e) motion "may not be used to argue a new legal theory"). Problematical here, the motion must be filed within 28 days of the entry of judgment. Fed. R. Civ. P. 59(e).

A.

Let's start with the timing. Motions for reconsideration under Rule 59(e) "must be filed no later than 28 days" from the date of the judgment. Fed. R. Civ. P. 59(e). By the time Singh filed his motion in December of 2024, more than *two years* had passed from the date that the Court entered judgment on Singh's petition. *See* ECF No. 35. And the Rules of Civil Procedure explicitly forbid the Court from extending the deadline for filing motions under Rule 59(e). *See* Fed. R. Civ. P. 6(b)(2).

Singh does not cite Rule 60(b), which provides litigants another avenue to seek relief from a prior judgment and has slightly looser time requirements, but there is little reason to think that his request would fare better under that Rule.  The only ground that arguably applies to the grounds cited in his motion is subsection (b)(6)'s catch-all permitting the Court to relieve a party from a judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  However, "[i]t is well established that a change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief."  *Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001).  "Rule 60(b)(6) cannot be used to make every new rule of law fully retroactive and create a situation where no litigation can ever be final."  *Wogoman v. Abramajtys*, 243 F. App'x 885, 890 (6th Cir. 2007).  Instead, "the decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'"  *Blue Diamond*, 249 F.3d at 529 (quoting *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)).

Singh bases his argument on a pronouncement in *Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024) (*en banc*), that outlines the duties of defense counsel to inform defendants — non-citizens and citizens alike — of all possible immigration consequences that might flow from a guilty plea, including the possibility of denaturalization.  But *Farhane*, as an out-of-circuit decision, is not binding on this Court, and it is not clear that the case represents a change in Sixth Amendment standards inasmuch as it is a simple application of *Padilla v. Kentucky*, 559 U.S. 356 (2010), Supreme Court precedent that the Court cited in its decision denying Singh's initial petition.  It is not an "extraordinary circumstance" justifying relief from judgment under Rule 60(b)(6).

B.

Even if Singh could overcome these procedural hurdles, *Farhane* would not change the decision in this case. The facts of that case bear some resemblance to Singh's situation. Relevant here, Farhane — a naturalized U.S. citizen — told immigration officials during his naturalization process that he had never committed any crimes for which he had not been arrested. *Farhane*, 121 F.4th at 359. That representation was false according to the government, which later charged him with several terrorism-related crimes based on his efforts to transfer funds to certain organizations in Afghanistan and Chechnya. *Id.* at 360. On the advice of counsel, Farhane entered a guilty plea and admitted that he had committed the crimes before he had naturalized. He ultimately spent eleven years in prison. *Id.* at 360-61. On his release, the government instituted denaturalization proceedings, asserting that his guilty plea established conclusively that he had knowingly committed crimes before he was naturalized and that the crimes established that he was not a "person of good moral character" when he naturalized. *Id.* at 361.

In response, Farhane filed a motion under 28 U.S.C. § 2255 to set aside his plea and conviction. He asserted that he received ineffective assistance of counsel because his attorney failed to explain that his plea came with a risk of denaturalization and deportation. *Ibid.* The district court denied his motion on the ground that his conviction did not create an imminent risk of deportation, so the Supreme Court's holding in *Padilla*, that constitutionally adequate representation requires counsel to advise their clients of potential immigration consequences of their conviction, had no bearing on the case. *Id.* at 362. A divided Second Circuit panel affirmed.

The *en banc* court reversed. It first concluded that "under *Padilla*, a naturalized U.S. citizen has a Sixth Amendment right to be advised by counsel that he may be denaturalized and deported as a result of his entry of a guilty plea." *Id.* at 363. This result is "a straightforward

- 7 -

application" of *Padilla*'s holding or "a necessary result" of its reasoning, the court explained, because a guilty plea that exposes a defendant to a risk of denaturalization necessarily exposes him to potential deportation. *Ibid.* (citations omitted). And although for naturalized citizens, "the risk of deportation is one step further removed from entry of a guilty plea than it is for a noncitizen," the court held that *Padilla* speaks in broad terms and "requires counsel to advise her client regarding the deportation consequences of his plea, whether or not those consequences are clear or certain." *Id.* at 366. The court also rejected the government's suggestion that *Padilla* applies only to non-citizens. *Id.* at 370-71. It remanded the case to the district court for a determination whether prevailing professional norms at the time the defendant was convicted required his counsel to advise naturalized citizen clients of the risk of denaturalization and deportation and whether the defendant was prejudiced under *Strickland*'s second element. *Id.* at 375-76.

*Farhane* does not lead to a different result in this case. To the extent that the *en banc* opinion is instructive, it is for its holding about what constitutes deficient performance by defense counsel advising naturalized citizens. But this Court's prior opinion already embraced *Farhane*'s conclusion when it observed that Singh's attorney "[p]robably" should warned him that denaturalization could have resulted from his plea agreement and that "'prevailing professional norms' after *Padilla* was decided suggest that counsel should have imparted that advice." *Singh*, 2022 WL 2209369, at *6. Singh does not explain how *Farhane* further assists him.

Moreover, an ineffective assistance claim requires a defendant show both that his attorney's performance was deficient, *and* that deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Farhane* offers no new insights on the prejudice component, *see* 121 F.4th at 376, and this Court and the Sixth Circuit resolved that question against him. Singh offers little explanation for why the Court should revisit that aspect of its conclusion.

To show prejudice, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Padilla*, 559 U.S. at 366 (quoting *Strickland*, 466 U.S. at 694). In the plea context, "we do not ask whether, had he gone to trial, the result of that trial would have been different than the result of the plea bargain." *Lee v. United States*, 582 U.S. 357, 364 (2017) (internal quotation marks omitted). Instead, we consider whether the defendant has demonstrated a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 364-65 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59); *see also Kovacs v. United States*, 744 F.3d 44, 52 (2d. Cir 2014) (concluding that prejudice also exists if the defendant can show that "there was a reasonable probability that [he] could have negotiated a plea that did not impact [his] immigration status").

In its initial opinion on Singh's petition, the Court emphasized that the government's criminal case against Singh for passport fraud was strong, particularly in light of the numerous and glaring inconsistencies in his answers on his immigration forms. The Court also found that Singh's explanations for the inconsistencies "challenge[] logic, and . . . would not have helped [his] credibility at a trial." *Singh*, 2022 WL 2209369, at *8. For those reasons, there was "no indication of a 'likelihood of a favorable outcome at trial.'" *Ibid.* (quoting *Dando v. Yukins*, 461 F.3d 791, 802 (6th Cir. 2006)).

The Court acknowledged that the prejudice inquiry is slightly more complex for defendants who might face immigration consequences as a result of their plea and recognized that some defendants may seek a "Hail Mary" by proceeding to trial when the consequences of a conviction by trial and plea are similarly dire. *Ibid.* (citing *Lee*, 582 U.S. at 368). But it explained that Singh had not established that he would have elected to proceed to trial because the government's

- 9 -

complaint in the denaturalization proceedings "although mentioning the guilty plea to passport fraud, does not style its case on the premise of [the] conviction. Instead, it alleges the underlying conduct as the basis for its effort to revoke citizenship, which it could rely upon even if Singh's guilty-plea-based conviction were set aside, and even if no criminal charges were brought in the first instance." *Id.* at *9.

Of course, this logic is in slight tension with *Farhane*'s reasoning that defense counsel's *Padilla* obligations are triggered when a guilty plea makes it "substantially easier for the government to obtain" a defendant's denaturalization. 121 F.4th at 373. As the Court recognized, "Singh's admissions at the plea hearing certainly make the government's denaturalization case easier . . . ." *Singh*, 2022 WL 2209369, at *6; *see also Singh*, 2023 WL 3151097, at *3 ("The parties agree that, by virtue of the plea agreement he entered in this case, Singh likely will be precluded from arguing during his denaturalization proceedings that he acted out of mere confusion when he concealed the fact of his first asylum application and deportation order in applying for permanent residence status.").

In any event, the Court's opinion denying Singh's first motion for reconsideration provided a further explanation why he had not satisfied *Strickland*'s prejudice component: he failed to "present evidence contemporaneous to his guilty plea to substantiate that he would have preferred then to proceed to trial." *Singh*, 2023 WL 3151097, at *4. On appeal, the Sixth Circuit built on this point, observing that Singh offered little more than "post hoc assertions that he would've opted for trial." *Singh*, 95 F.4th at 1034. In fact, the court of appeals explained, the evidence contemporaneous to Singh's plea cut against him because "his decision to plead guilty was in 'no way conditioned upon or affected by the advice he has been given regarding any potential immigration consequences,'" "his decision to plead was 'wholly independent of the immigration

consequences of a conviction,'" and he expressed no reservations in response to Judge Cohn's explicit warning that the plea could affect his citizenship. *Ibid.* (quoting Plea Agreement, ECF No. 16, PageID.43-44). Courts are "generally wary" of upsetting a plea agreement based on a defendant's post hoc assertions that contradict statements he made on the record during a plea hearing. *United States v. Brown*, No. 22-3671, 2023 WL 4564766, at *3 (6th Cir. July 17, 2023) (quoting *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004)). Some have gone so far as to hold that a proper plea colloquy "cure[s] any misunderstanding [a] defendant may have had about the consequences of the plea," and that a district court's "proper advisement of rights is thus deemed to 'foreclose' any showing of actual prejudice attributed to counsel's erroneous advice." *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) (citing *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016)).

Singh, once again, asks for the Court to hold a hearing to expand the evidentiary record. But his present motion offers no new facts that would cause one to question the Court's previous conclusion, affirmed by the court of appeals, that no hearing was necessary because the record makes clear that his ineffective assistance claim lacks merit.

III.

Singh has not established that either the Court's order denying his petition for writ of error *coram nobis* or that the order denying the first motion for reconsideration were predicated upon any manifest errors of law or fact, or that correcting the order would prevent any manifest injustice. There are no grounds under Federal Rule of Civil Procedure 59(e) for amending or altering the Court's order.

- 12 -

Accordingly, it is **ORDERED** that the defendant's second motion to alter or amend the order and judgment denying petition for writ of *coram nobis* (ECF No. 53) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:  May 7, 2025